UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 05 CR 993 |
| v. ) | |
| ) | Honorable Charles R. Norgle |
| ALEXANDRA MILLER. ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court is Defendant Alexandra Miller's Motion for Judgment of Acquittal, or Arrest of Judgment or for a New Trial. For the following reasons, the Motion is denied.

## I. BACKGROUND

In December 2005, a two count indictment naming Defendants Samer Abuhabsah ("Abuhabsah") and Alexandra Miller ("Miller") (collectively "Defendants"), charged that between October 2004 and June 2005, Defendants conspired with each other and other unknown individuals to receive, possess, conceal, store, barter, sell, and dispose of merchandise that had crossed the state line of Illinois after having been stolen, in violation of 18 U.S.C. §§ 2315 and 2. The following facts were alleged.

In approximately early May 2004, Abuhabsah, with the assistance of unnamed co-conspirators, obtained a fake Indiana driver's license in the name of "Jim Jones." Abuhabsah used that fake ID to rent a mailbox at a United Parcel Service ("UPS") store in Chicago, Illinois. On or about March 3, 2005, Miller used an Illinois identification card bearing the name and photograph of Rosaura Maldonado to rent a mailbox at the same Chicago UPS store. During the time period relevant to the indictment, the Defendants leased a total of four mailboxes at UPS

1

stores located in Chicago and Oak Lawn, Illinois. Defendants also maintained numerous eBay accounts, through which they could sell items on the internet, and approximately eight different PayPal accounts, through which they could receive online payments for the items they sold on eBay. Defendants then arranged to receive stolen items (namely, personal computers and electronic equipment) at their UPS mailboxes, and also at Miller's apartment. Defendants sold these items on eBay, and sent some of the proceeds to their co-conspirators in Nigeria and Vietnam via Western Union wire transfer. The total value of the stolen merchandise received by Defendants was approximately $93,000.

Abuhabsah entered a plea of guilty on July 11, 2006. On November 17, 2006, the court sentenced Abuhabsah to one year and one day in the United States Bureau of Prisons, to be followed by two years of supervised release. Abuhabsah was also ordered to make restitution in the amount of $42,371.87. Miller exercised her right to a trial by jury. The trial commenced on February 13, 2007. On February 16, 2007, the jury found Miller guilty as charged in both counts of the indictment. Sentencing is set for May 31, 2007.

After the Government rested its case, Miller moved the court pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal. The court denied the motion. Miller now renews this motion pursuant to Rule 29(c)(2), and, in the alternative, moves the court for a new trial pursuant to Rule 33. These Motions are fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Pursuant to Federal Rule of Criminal Procedure 29(a), before a case is submitted to the jury, "the court on the defendant's motion must enter a judgment of acquittal of any offense for

which the evidence is insufficient to sustain a conviction." After a jury verdict, a defendant may renew his or her motion for judgment of acquittal pursuant to Rule 29(c)(2). In deciding a Rule 29 motion,

> [t]he firmly established rule is that the court must decide whether at the time of the motion there was relevant evidence from which the jury could reasonably find (defendant) guilty beyond a reasonable doubt. Evidence will be evaluated in the light most favorable to the Government, bearing in mind that it is the exclusive function of the jury to interpret witness credibility.

United States v. Khilchenko, 324 F.3d 917, 921 (7th Cir. 2003) (internal quotation marks and citation omitted); United States v. Payne, 102 F.3d 289, 295 (7th Cir. 1996); United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). A court may only grant a Rule 29 motion "when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United States v. Blassingame, 197 F.3d 271, 284 (7th Cir. 1999) (internal quotation marks and citation omitted). The Rule 29 movant therefore "faces a nearly insurmountable hurdle." Id.

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The court should order a new trial "only where the verdict is against the manifest weight of the evidence, and a guilty verdict would result in a miscarriage of justice." United States v. Jenkins, 218 F.R.D. 611, 613 (N.D. Ill. 2003). Motions to grant a new trial "are disfavored, and properly granted only in the most extreme cases." Id. In deciding a motion to grant a new trial, "the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses." United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999). "If the complete record, testimonial and physical, leaves a strong doubt as to the

3

defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial." United States v. Morales, 910 F.2d 467, 467 (7th Cir. 1990).

## B. Miller's Motion for Acquittal or for a New Trial

Miller makes the following assertions in her Motion for Acquittal or for a New Trial. (1) There was insufficient evidence to convict. (2) She was denied a fair trial when the district court allowed the Government to cross-examine her regarding a retail theft arrest. (3) The court erred when it overruled Miller's objection to the Government's closing arguments. (4) The court erred when it restricted the testimony of a defense expert witness. (5) The court erred in overruling Miller's objection to the "Ostrich" jury instruction.

### 1. Insufficient Evidence

Miller asserts that the Government presented insufficient evidence to prove that (1) she agreed with Abuhabsah to commit a crime, and (2) she knew the merchandise she received in her UPS mailbox and at her home was stolen. The court cannot agree. The Government presented evidence in the form of witness testimony and documents that showed, *inter alia*, that Miller received vast quantities of stolen merchandise at UPS mailboxes and her home, that this merchandise was sent to her under assumed names, that she and Abuhabsah fenced these items on eBay, and that she and Abuhabsah then wired a portion of the proceeds to co-conspirators abroad. In addition, Miller took the stand to testify in her defense, which gave the jury a chance to judge her credibility, or lack thereof. Miller's argument that the Government presented insufficient evidence to convict is therefore meritless. See Khilchenko, 324 F.3d at 921.

## 2. *Improper Cross-Examination of Defendant*

During his opening statement, Miller's attorney asserted that the only reason Miller used a stolen identity to open her UPS mailbox was because she did not have a driver's license of her own at that time. Upon hearing this assertion, the Government obtained records from the Illinois Secretary of State that showed that Miller did in fact have an Illinois driver's license during this time period. The Government introduced this evidence during its case in chief. In response, Miller claimed that her license had been confiscated, and that she had not had a driver's license since then.

The Government then cross-examined Miller regarding the circumstances of a retail theft arrest during which Miller had produced an Illinois driver's license when asked for identification. This arrest occurred during the time period in which Miller asserted that she did not have a driver's license. The Government therefore asserts that it cross-examined Miller regarding this matter only in an attempt to impeach her credibility.

Miller argues that this line of questioning should have been excluded as irrelevant, prejudicial, and as improperly demonstrative of her propensity for criminal behavior. However, this cross-examination was clearly admissible under Federal Rule of Evidence 608(b) as probative of Miller's "character for truthfulness." See United States v. Seymour, 472 F.3d 969, 971 (7th Cir. 2007) ("Rule 608(b) is explicit that the determination of whether to allow specific instances of conduct to be used to challenge a witness's reputation for truthfulness is committed to the discretion of the district judge, and Rule 403 establishes the standard for the exercise of the judge's discretion in evidentiary matters."). In its discretion, the court determined that this cross-examination was admissible under Rule 608(b) and did not run afoul of Rule 403. The court can

5

discern no reason to alter its decision on this matter now. Miller's assertion that the Government improperly cross-examined her regarding her retail theft arrest therefore fails.

### 3. Improper Closing Arguments

Miller next argues that the Government engaged in improper "burden-shifting" during its closing arguments when it asserted that the defense should have called Abuhabsah as a witness. This argument is meritless.

> In certain circumstances, a party may comment on the other party's failure to call a witness. If '[1] a party has it peculiarly within its power to produce witnesses [2] whose testimony would elucidate a transaction, the fact that he does not do it creates a presumption that the testimony, if produced, would be unfavorable.'

United States v. Knox, 68 F.3d 990, 1000 (7th Cir. 1995) (quoting United States v. Addo, 989 F.2d 238, 242 (7th Cir. 1993)); see also United States v. Miller, 276 F.3d 370, 374 (7th Cir. 2002) ("[A]s long as it is clear to the jurors that the government carries the burden of proof, the prosecutor may tell the jury that a defendant has the power to subpoena witnesses.").

### 4. Improper Limitation of Expert Defense Witness Testimony

Miller also argues that the court improperly limited the testimony of an expert defense witness, Dr. Viale-Val. The court determined that Dr. Viale-Val's opinions regarding Miller's serious affective and personality disturbances were relevant, and allowed this witness to offer testimony on these matters. However, the court did not allow Dr. Viale-Val to offer an opinion as to the ultimate issue in the case, specifically, whether Miller did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. See F.R.E. 704(b). The court also determined that certain background conversations with Miller regarding Miller's childhood were not relevant. See United States v. Bagley, 473 U.S. 667, 703 (1985)

6

("[T]here are two components to relevance – materiality and probative value . . . If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial."). Miller has offered the court no pertinent reason to revisit its evidentiary rulings regarding Dr. Viale-Val's testimony.

### 5. *The Ostrich Instruction – Conscious Avoidance*

Finally, Miller asserts that the court erred in giving the jury the "Ostrich instruction."

After closing arguments, the court instructed the jury, *inter alia*, that:

> When the phrase "knowingly" is used in these instructions, it means that the defendant realized what he or she was doing and was aware of the nature of his or her conduct, and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.
>
> You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut her eyes for fear of what she would learn, you may conclude that she acted knowingly, as I have used that word.

Judge Posner has offered an apt description of the "Ostrich instruction."

> [Ostriches] do not just fail to follow through on their suspicion of bad things. They are not merely *careless* birds. The bury their heads in the sand so that they will not see or hear bad things. They *deliberately* avoid acquiring unpleasant knowledge. The ostrich instruction is designed for cases in which there is evidence that the defendant, knowingly or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings. A deliberate effort to avoid guilty knowledge is all the guilty knowledge the law requires.

United States v. Giovannetti, 919 F.2d 1223, 1228 (7th Cir. 1990).[1]

---

[1] Contrary to popular belief, ostriches do not actually bury their heads in the sand. When an ostrich senses danger and cannot run away, it simply lays flat on the ground, with its lightly colored head and neck blending in with the color of the soil. From a distance, it appears that the ostrich has hidden its head in the sand, as only the body is visible. http://sandiegozoo.org/animalbytes/t-ostrich.html.

7

In this case, the "Ostrich instruction" clearly applied. Miller claimed that she did not know that she was receiving and selling stolen goods, even though the Government's evidence demonstrated that she and Abuhabsah did so under false identities, never paid for these items, and sent portions of the proceeds to individuals in Nigeria and Vietnam. Miller's apartment contained stacks of valuable stolen merchandise. Given this evidence, the jury certainly could have found that Miller "strongly suspect[ed] that [she was] involved in shady dealings, and [had taken] steps to make sure that she [did] not acquire full or exact knowledge of the nature and extent of those dealings." See id. Miller's assertion that the court erred in giving the jury the "Ostrich instruction" therefore fails.

For the above stated reasons, Miller's motion for acquittal is denied. In addition, the court determines that the jury's verdict was not "against the manifest weight of the evidence." See Jenkins, 218 F.R.D. at 613. After again reviewing the overwhelming evidence of Miller's involvement in this plot, the court is not left with a "strong doubt as to [Miller's] guilt." See Morales, 910 F.2d at 467. Moreover, there was no danger that the court's instructions to the jury were confusing or misleading. See United States v. Murphy, 469 F.3d 1130, 1137 (7th Cir. 2006). Miller's motion for a new trial is therefore also denied.

### III. CONCLUSION

For the foregoing reasons, Miller's Motion for Judgment of Acquittal, or Arrest of Judgment or for a New Trial is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 11, 2007